IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION 2016 MAY -6  P 4: 24

DELTA APPAREL, INC. and SALT
LIFE, LLC (f/k/a To The Game,
LLC),

      Plaintiffs,

v.

DAVID PEYSER SPORTSWEAR,
INC.; MV Corp., Inc.; JOSHUA
PEYSER, individually, and ALAN
PEYSER, individually,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Case No: 3:16-CV-325-WKW-6mB

(Jury Trial Demanded)

## COMPLAINT

Plaintiffs Delta Apparel, Inc. and Salt Life, LLC (collectively "Delta"), by and through their undersigned counsel, complain against Defendants David Peyser Sportswear ("DPS"), a New York Corporation, MV Corp., Inc. ("MV Corp."), a New York Corporation authorized to do business in the state of Alabama, (collectively "Corporate Defendants"), Joshua Peyser, individually, and Alan Peyser, individually, (collectively "Individual Defendants") as follows:

### NATURE OF THE ACTION

1.    This is an action for copyright infringement, contributory copyright infringement, fraud and fraudulent suppression, conversion, trespass to chattel,

permanent injunction and unjust enrichment. Delta is the owner of copyrights and property more fully described herein. Defendants have willfully infringed on Delta's copyrights by using and misappropriating Delta's copyrighted material without Delta's consent or providing compensation, committed fraud in obtaining and retaining Delta's property, and repeatedly, continually and willfully interfering with Delta's property rights. Defendants' conduct has unjustly enriched the Defendants and resulted in damages to Delta, the extent of which are to be determined at trial.

## THE PARTIES

2.      Delta is a corporation duly organized and existing under the laws of the State of Georgia, with a principal place of business at 322 South Main Street, Greenville, South Carolina 29601. Delta specializes in the manufacture and distribution of active wear apparel.

3.      Salt Life, LLC is a company organized and existing under the laws of the state of Georgia with its principal place of business in Columbus, Georgia. Salt Life is a wholly owned subsidiary of Delta Apparel, Inc.

4.      Defendant DPS is a New York corporation, which manufactures and markets outerwear and sportswear. DPS's principal place of business is located at 88 Spence St., Bay Shore, New York 11706. DPS is the parent corporation of Defendant MV Corp.

2

1435481.1

5.      Upon information and belief, Defendant MV Corp. is a corporation organized and existing under the law of the State of New York and registered to do business in the State of Alabama. MV Corp. manufactures sweatshirts, t-shirts, headwear and athletic apparel. MV Corp. conducts its "The Game" business operations, which are at issue in this lawsuit, from MV Corp.'s 16 Downing Drive, Phenix City, Alabama location.

6.      Upon information and belief, Joshua Peyser is a resident of New York and is an owner, manager, principal, agent and/or officer of MV Corp. and DPS. Joshua Peyser personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of the Corporate Defendants that are alleged herein.

7.      Upon information and belief, Alan Peyser is a resident of New York and is an owner, manager, principal, agent and/or officer of MV Corp. and DPS. Alan Peyser personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of the Corporate Defendants that are alleged herein.

8.      DPS, MV Sport, Joshua Peyser and Alan Peyser (collectively "Defendants") are jointly and severally liable for the tortious and infringing conduct alleged herein.

3

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this controversy under the Copyright Act, 17 U.S.C. § 501; the federal question statute, 28 U.S.C. § 1331; the diversity of citizenship statute, 28 U.S.C. § 1332; and the statute granting the United States' district courts original jurisdiction over copyright disputes, 28 U.S.C. § 1338(a). This Court has supplemental jurisdiction over Delta's claims arising under Alabama law because those claims form part of the same controversy and derive from a common nucleus of operative fact. *See* 28 U.S.C. § 1367(a).

10.     This Court has personal jurisdiction over Defendants because Defendants have purposefully directed their unlawful, tortious, and damaging commercial activity into the State of Alabama by committing the acts complained of herein in whole or in part within the forum. In conducting substantial operations within the state of Alabama, Defendants have further purposefully availed themselves of the laws of this state. As alleged more fully herein, Delta's claims arise from Defendants' contacts within this forum.

11.     Pursuant to 28 U.S.C. §§ 1391 and 1400, the United States District Court for the Middle District of Alabama is the appropriate venue for this action, because (1) a substantial part of the events giving rise to the claims at issue in this litigation occurred in this judicial district, causing damage and injury to Delta and

4

their valuable intellectual property rights, and (2) because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A.    Delta's Software

12.    Delta specializes in the design, merchandising, sales, and marketing of a variety of lifestyle branded and basic active-wear, apparel and headwear, which is sold both on a wholesale basis and directly to consumers via e-commerce and physical retail outlets.

13.    Delta holds a license to use the "BlueCherry" software from Computer Generated Solutions ("CGS").

14.    BlueCherry is an Enterprise Resource Planning ("ERP") software program that assists companies in planning and managing supply chain, sales, distribution and related business activities.

15.    Delta obtained BlueCherry from CGS in a generic, blank form. A comprehensive data compilation, customization and configuration effort by Delta was required to make functional use of BlueCherry.  In addition, to better maximize the utility of BlueCherry within its business, Delta further contracted with CGS to program add-on software to further customize BlueCherry for specific use in Delta's "The Game" headwear and apparel business.  The compilation,

5

configuration and customization process consumed hundreds of hours and took well over one year to complete.

16.    The result of Delta's data compilation, configuration and customization process was a system specifically and uniquely tailored to the operation of Delta's "The Game" headwear and apparel business. The various data compilations, customizations and configurations were either created by or commissioned for Delta and are solely owned by Delta.    All of the data compilation, configuration, customization, and naming conventions and other items and structure incorporated into the BlueCherry software's generic, blank form by or on behalf of Delta shall be hereinafter known and referred to as the "Software".

17.    Delta further developed comprehensive and specifically-tailored written operating procedures and guidelines consisting of hundreds of pages to serve as guidelines for the use and maintenance of the Delta-customized and Delta-configured BlueCherry software. Such operating procedures shall be hereinafter known and referred to as the "SOPs".

18.    Delta Apparel is the owner of the entire right, title and interest in and to the Software and the SOPs.

6

19.     Arising from the Software and the SOP's, Delta has the following registered copyrights: TXu001989334 and TXu001989369 (hereinafter referred to as the "The Delta Apparel Copyrights").[1]

**B.     2015 Asset Purchase**

20.     In or around the latter half of 2014, Delta and the Defendants engaged in discussions regarding the sale of Delta's "The Game" branded collegiate headwear and apparel business, which was operated by Delta's wholly-owned subsidiary Salt Life, LLC (f/k/a To The Game, LLC), to the Corporate Defendants.

21.     In furthering negotiations, the assets utilized in Delta's "The Game" branded collegiate headwear and apparel business were individually identified and valued for consideration by the Corporate Defendants.

22.     The Software in question was specifically identified by Delta as an individual, line item asset and valued at approximately $1,000,000.

23.     In the course and scope of negotiations leading up to and concluding with the closing of DPS's purchase of Delta's "The Game" branded collegiate headwear and apparel business on March 2, 2015 (the "2015 Asset Purchase"), Defendants and their agents repeatedly acknowledged the Software as a separately identifiable asset with a value of approximately $1,000,000.

---

[1] True and correct copies of the Certificates of Registration for The Delta Apparel Copyrights are attached to this Complaint as Exhibit A.

7

24.   In the period prior to closing the 2015 Asset Purchase, Defendants and their agents communicated to Delta and its agents that Defendants did not believe they needed the Software to run the "The Game" branded collegiate headwear and apparel business and declined to include it within the 2015 Asset Purchase.

25.   To that end, on March 2, 2015, Delta entered into a contract with DPS for the sale of Delta's "The Game" branded collegiate headwear and apparel business.

26.   Section 1.2(J) of the March 2, 2015, Asset Purchase Agreement ("Asset Purchase Agreement") specifically identified the Software as an asset of Delta and specifically excluded the Software from the asset purchase in stating:

> "1.2   Excluded Assets. Notwithstanding the foregoing or any other provision of this Agreement to the contrary, Seller will retain and not transfer, and Purchaser will not purchase or acquire, the following (collectively, the "Excluded Assets"):
>
> (j)   The enterprise resource planning ("ERP") and accounting software system(s), including but not limited to all related files, databases, programs, and other items and materials, utilized in the Business".

27.   In the period prior to closing the 2015 Asset Purchase, but after Defendants initially declined to purchase the Software, Delta's information technology personnel, in good faith, traveled to New York to meet with Defendants concerning the transition of Delta's "The Game" branded collegiate headwear and apparel business to DPS. During the course of that meeting, Delta's

8

personnel advised Defendants that absent purchasing the Software, Defendants would need to allow time sufficient to on board an alternative software solution for operating the business.

28.     Defendants, having failed to find an alternative software solution to using Delta's Software, subsequently reopened conversations regarding the Software.  At that time, Defendants represented an interest in the Software, but requested to negotiate a rental of the Software from Delta.  Believing Defendants were acting and making representations in good faith, Delta agreed to permit Defendants to use the Software following the asset purchase without cost for a period of six months.

29.     Defendants represented and agreed that at the close of the above-stated six-month period, absent a purchase or an extension, Defendants would discontinue the use of the Software.

30.     Having not heard from Defendants for several months, Delta reached out to Defendants in August 2015 to determine whether Defendants intended to negotiate the purchase of the Software prior to the expiration of the six-month term.

31.     At that time, in bad faith and contrary to all negotiations, admissions, understandings, prior course of dealings and the express terms of the Asset Purchase Agreement, Defendants claimed ignorance of Delta's property rights,

9

asserted the Software was not a separately owned and excluded asset from the March 2015 asset sale, denied Delta's property rights in the Software and refused to relinquish dominion and control over Delta's Software, SOP's and The Delta Apparel Copyrights.

32.    In or around October 2015, without having at any point discontinued use of the Software, Defendants reached out to Delta to further discuss the purchase of the Software.  In furtherance of that discussion, Delta made an offer to sell a certain volume of apparel inventory and the Software to Corporate Defendants for a specified amount.  Defendants did not counter, but represented that they were considering Delta's offer.

33.    Defendants Josh Peyser and Alan Peyser further represented that the Defendants would, at the very latest, discontinue use of the Software by December 31, 2015.

34.    In mid-December 2015, Defendants again approached Delta and requested an apparel inventory report that they claimed was necessary to further consider Delta's offer.  The requested report was promptly provided by Delta on December 29, 2015.

35.    Before the close of December 31, 2015, Defendants declined to further negotiate, and stated that they would no longer discontinue use of the

10

Software on December 31. Defendants stated that they would not discontinue use of the software until at least the end of March 2016.

36.    Delta demanded as compensation that Defendants purchase $250,000 of apparel inventory in exchange for a license to use the Software until March 31, 2016. Defendants did not respond to Delta's demand and have continued their willful, unlawful use of the Software to the present.

### C.    Defendants' Infringing Activities and Unlawful Conduct

37.    On September 2, 2015, Defendants' right to use Delta's software expired.

38.    Since that time, Defendants have unlawfully and, with full knowledge of Delta's objection to their continued use and the demands that they cease and desist use, willfully used, infringed upon and interfered with Delta's copyrights and property rights in the Software.

**FOR A FIRST CAUSE OF ACTION
AGAINST THE DEFENDANTS**

**(Violations of Copyright Act, 17 U.S.C. § 501 – Willful Copyright
Infringement)**

39.    Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

40.    As set forth previously, Delta owns the Software, SOPs and The Delta Apparel Copyrights.

11

41.   The Delta Apparel Copyrights are registered with the United States Copyright Office and bear the following registration numbers: TXu001989334 and TXu001989369.

42.   At all times relevant to this action, Defendants have possessed actual notice of Delta's ownership of and exclusive rights in and to the Software, SOPs and The Delta Apparel Copyrights.

43.   Defendants' license to use the Software and The Delta Apparel Copyrights expired on September 2, 2015.

44.   With knowledge and notice of Delta's rights in the Software, SOPs and The Delta Apparel Copyrights, Defendants have continued to repeatedly use and misappropriate the Software, SOPs and The Delta Apparel Copyrights in its daily business activities.

45.   By the actions alleged above, Defendants have willfully infringed upon and continue on a daily basis to willfully infringe upon and without court intervention will in the future continue to willfully infringe upon The Delta Apparel Copyrights.

46.   Defendants' acts of copyright infringement, and the threat of continuing infringement, have caused, and will continue to cause, Delta repeated and irreparable injury.  Delta's remedy at law is not adequate to fully compensate it for the injuries already inflicted and further threatened by Defendants.  Therefore,

12

Delta is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, subsidiaries, representatives and assigns, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws, pursuant to 17 U.S.C. § 502.

47.    As a remedy for Defendants continued, repeated infringement of Delta's copyright, Delta is entitled to actual damages, statutory damages, and attorney's fees and costs, as well as an injunction to prevent any future infringement by the Defendants.

### FOR A SECOND CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### (Contributory Copyright Infringement)

48.    Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

49.    Defendants knew or had reason to know of the infringing activity, and induced, caused, or materially contributed to the infringing conduct.

50.    Defendants were in a position to control the use of The Delta Apparel Copyrights and had authorized the daily, repeated use without the permission of Delta.

51.    As a remedy for Defendants continued, repeated infringement of Delta's copyrights, Delta is entitled to actual damages, statutory damages, and

13

attorney's fees and costs, as well as an injunction to prevent any future infringement by the Defendants.

**FOR A THIRD CAUSE OF ACTION**
**AGAINST THE DEFENDANTS**
**(Vicarious Liability in Copyright)**

52.     Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

53.     Individually named Defendants were owners, managers, principals, officers, directors, agents and/or employees of the Corporate Defendants.

54.      In their capacity as owners, managers, principals, officers, directors, agents and/or employees of the Corporate Defendants, the individually named Defendants had the ability to supervise the infringing activity and a financial interest in that activity.

55.     The individually named Defendants used the Corporate Defendants as an instrument to carry out a deliberate infringement of The Delta Apparel Copyrights.

56.     The individually named Defendants were the dominant influence in the corporation and determined the policies that resulted in the infringement.

57.     As a remedy for Defendants continued, repeated infringement of The Delta Apparel Copyrights, Delta is entitled to actual damages, statutory damages,

14

and attorney's fees and costs, as well as an injunction to prevent any future infringement by the Defendants.

## FOR A FOURTH CAUSE OF ACTION
## AGAINST THE INDIVIDUAL DEFENDANTS
### (Fraud and Fraudulent Suppression)

58.    Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

59.    In connection with the 2015 Asset Purchase and subsequent events surrounding the use of the Software, the Individual Defendants made the following material representations, omissions or suppression of facts:

    a.  On or before the 2015 Asset Purchase, acknowledged Delta's separate and distinct ownership of the Software and expressed false interest in renting and potentially purchasing the software post-asset purchase in order to gain possession of the Software without compensation.

    b.  On or before the 2015 Asset Purchase, falsely represented in the course of negotiating the rental that they would cease use of the software after a six-month rental period.

    c.  Before the expiration of the six-month rental period, falsely claimed ignorance of the six-month rental period and falsely claimed ownership of Delta's Software.

    d.  In October 2015, falsely represented to Delta a renewed interest in purchasing the software.

    e.  Falsely represented in late 2015 that "We will be off [the Software] by December 31, 2015."

15

      f. Falsely claimed ignorance of Delta's continued ownership of the Software.

60.    Defendants' material representations, omission and suppression of facts to Delta were false and fraudulent.

61.    Defendants had actual knowledge of any and all omissions and suppressed facts.

62.    Defendant made false, fraudulent representations, omissions and suppressed facts either willfully to deceive Delta or recklessly without knowledge of its falsity.

63.    Delta believed and relied on Defendants' representations, which induced Delta to act in accordance with Defendants' representations or refrain from acting in a manner beneficial to Delta's interests.

64.    Delta's reliance on Defendants' material representations, omission and lack of knowledge of suppressed facts was justifiable under the circumstances.

65.    As a direct and proximate result, Delta has suffered actual damages for lost licensing/rental value over the course of the past year, ongoing expenses in furtherance of recovering its property, lost time, energy and effort of it executives and any and all further damages, actual, consequential or punitive, that the court may justly award.

16

## FOR A FIFTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
### (Conversion)

66.     Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

67.     Defendants have intentionally used the Software after September 2, 2015, without Delta's consent.

68.     Defendants' continued use of the Software after September 2, 2015, constitutes wrongful possession.

69.     Defendants have willfully retained wrongful possession and control of Delta's Software over the continued objection of Delta.

70.     In doing so, Defendants have illegally retained, misused, and interfered with Delta's ownership of the Software.

71.     As a result of Defendants' refusal to cease use of the Software, Delta has been denied its ownership rights and has been forced to seek legal relief.

72.     As a result of Defendants' wrongful ownership, retention, and misuse of Delta's Software, Delta has suffered actual damages for the lost value of the property, ongoing expenses in furtherance of recovering its property, lost time, energy and effort of its executives and any all further damages actual, consequential or punitive that the court may justly award.

17

## FOR A SIXTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
### (Trespass to Chattel)

73.     Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

74.     As of the expiration of the six month term on September 2, 2015, Defendants have had no right to continue possession of Delta's Software.

75.     Defendants continue to possess and make commercial use of the Software willfully, intentionally, improperly, and with full knowledge of Delta's ownership and objections to Defendants' continued possession and use.

76.     Defendants past, present and future possession of Delta's Software constitutes an intentional dispossession and has intentionally deprived Delta of its property for a substantial period of time such that Defendants have and are committing a trespass to chattel in accordance with Alabama law.

77.     As a result of Defendants' wrongful trespass, dispossession, deprivation for a substantial period of time, retention and misuse of Delta's Software, Delta has suffered actual damages for the lost value of the property, ongoing expenses in furtherance of recovering its lost value, lost time, energy and effort of its executives and any all further damages actual, consequential or punitive that the court may justly award.

18

1435481.1

## FOR A SEVENTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS

### (Permanent Injunction)

78.     Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

79.     As set forth herein, Defendants have, do and will continue to wrongfully possess and use Delta's Software absent court intervention.

80.     Defendants actions complained of herein have and will cause Delta irreparable injury to its property rights and copyrights in the Software absent court order and injunction.

81.     Remedies at law are inadequate to compensate Delta for the injury and continued injury to its property rights and copyrights in the Software.

82.     The balance of hardships between the parties justifies a remedy in equity.

83.     This is a private matter.  Given that, the public interests would not be disserved by a permanent injunction.

84.     For these reasons, Delta is entitled to an order permanently enjoining Defendants from possessing or making any further use of the Software, SOPs and The Delta Apparel Copyrights and for the deletion of the Software or any action

19

short of deletion that would dispossess Defendants of Delta's Software, SOPs and The Delta Apparel Copyrights.

**FOR AN EIGHTH CAUSE OF ACTION**
**AGAINST THE CORPORATE DEFENDANTS**
**(Unjust Enrichment)**

85.    Delta repeats and incorporates by reference the allegations contained in the paragraphs above.

86.    Delta Apparel conferred a benefit upon Defendants by providing Defendants limited access to its Software for a period of six months following the 2015 Asset Purchase.

87.    After the expiration of the six-month period, Defendants agreed to either purchase the software or to cease using the software altogether.

88.    Defendants have realized that benefit by using the Software.

89.    Defendants' limited license to use the Software expired on or around September 2, 2015, six months after the parties executed the Asset Purchase Agreement.

90.    Defendants used, and continue to use the Software.

91.    From September 2, 2015, to date, Defendants have not compensated Delta for its continued use of the Software.

20

92.    Under the circumstances, it is inequitable for Defendants to retain the benefits of Delta's copyrighted software without compensating Delta.

## PRAYER FOR RELIEF

WHEREFORE, Delta respectfully requests that this Court enter judgment against Defendants as follows:

93.    Defendants be required to pay Delta for all actual damages sustained;

94.    Defendants be required to pay Delta for all statutory damages sustained;

95.    Defendants be required to pay to Delta such damages as Delta may have sustained as a consequence of Defendants' unlawful acts;

96.    Defendants be required to pay Delta punitive damages in an amount to be determined by the jury;

97.    Defendants be required to pay Delta's costs and reasonable attorneys' fees incurred in this action;

98.    Preliminary and permanently enjoining Defendants and their officers, directors, agents, employees, subsidiaries, representatives and assigns, and all persons acting in concert with them, from using Delta's Software;

99.    That the court issue any and all orders necessary to cause the permanent removal of the Software from Defendants' systems;

21

1435481.1

100.   Awarding Delta prejudgment interest on any monetary award made part of the judgment against Defendant; and

101.   Awarding Delta such additional and further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Delta demands a trial by struck jury of any issue so triable.

Dated this the 6th day of May, 2016.

_Will Hill Tankersley_
One of the Attorneys for Plaintiffs

**OF COUNSEL:**

Will Hill Tankersley (wtankers@balch.com)
Thomas R. DeBray, Jr. (tdebray@balch.com)
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100

*Attorneys for Plaintiffs Delta Apparel, Inc. and Salt Life, LLC*

22

1435481.1

## CERTIFICATE OF SERVICE

**PLAINTIFFS TO SERVE DEFENDANTS VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED:**

David Peyser Sportswear
90 Pence Street
Bay Shore, New York 11706

MV Corp., Inc.
Robert White—Registered Agent
16 Downing Drive
Phenix City, Alabama 36869

Joshua Peyser
16 Glenwood Drive
Great Neck, New York 11021

Alan Peyser
1 Merrall Drive
Lawrence, New York 11559

_Will Hill Tankersley_
Of Counsel