IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DELTA APPAREL, INC. and SALT LIFE, LLC (f/k/a To The Game, LLC) | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CASE NO.:  3-16-cv-325-RHL-WC |
| DAVID PEYSER SPORTSWEAR, INC.; MV Corp., Inc.; JOSHUA PEYSER, individually; and ALAN PEYSER, individually, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants **David Peyser Sportswear, Inc.**, **MV Corp., Inc.**, **Joshua Peyser**, and **Alan Peyser** (collectively, "Defendants") respectfully submit this Reply in support of their Partial Motion to Dismiss (Doc. 48) directed to certain claims set forth in the Amended Complaint (Doc. 43) of Plaintiffs Delta Apparel, Inc. ("Delta") and Salt Life, LLC (collectively, "Plaintiffs").  Plaintiffs' Response (Doc. 51) fails to shed any light on their conclusory definition of "Additional Excluded Property" and fails to address substantively many of the arguments set forth in Defendants' motion.  Further, Plaintiffs have failed to establish the "extra element" required to save any of their state law claims from preemption.  Instead, those claims fall

squarely within the bounds of the Copyright Act and its preemption provision. Plaintiffs' claims for misappropriation of trade secrets, breach of contract, fraud, conversion, and permanent injunctive relief are due to be dismissed as a matter of law, Plaintiffs' Opposition notwithstanding.

## I. ANY ASPECTS OF PLAINTIFFS' CLAIMS BASED ON "ADDITIONAL EXCLUDED PROPERTY" FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' definition of "Additional Excluded Property" is the epitome of conclusory pleading barred by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). Nothing in Plaintiffs' Opposition explains how it is not. And understandably so, as Plaintiffs' definition is constructed to address a legal issue in conclusory fashion by defining an ambiguous group of things to be "beyond the reach of copyright protection." It therefore comprises the "labels" and "conclusions" prohibited by the seminal cases on this subject. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65; *Iqbal*, 556 U.S. at 678–79, 129 S. Ct. at 1950.

Perhaps most tellingly, Plaintiffs do *nothing* in their Response to identify the "proprietary facts, customizations, lists, drafts, hardcopy, ideas, concepts, as well as other property, tangible and intangible" in issue so that the issue of preemption may be determined. *See* Pls.' Resp. in Opp'n to Defs.' Partial Mot. to Dismiss ("Opp'n") at 3−7 (Doc. 51). And it was their *second* opportunity to do so (first, after the Court

granted them leave to amend their initial Complaint, and second, after Defendants challenged their conclusory definition in a partial motion to dismiss). Defendants, and presumably the Court, are left to guess as to what Plaintiffs are actually placing in issue and whether those things fall within the subject matter of copyright. Dismissal is warranted in this situation under Rule 12(b)(6) for any aspects of Plaintiffs' claims that are based on or rely upon this definition.

Plaintiffs all but admit that their definition is, at the very least, "vague" in trying to place their pleading failure under Rule 12(e) instead of 12(b)(6). *See* Opp'n at 6−7. But Plaintiffs miss the point. Their lawsuit invokes the Copyright Act and its preemption provision. In trying to avoid this *legal* issue with a *conclusory* definition – one that defines an ambiguous list of things to be "beyond the reach of copyright protection" – they run afoul of Rule 12(b)(6). In other words, because the definition is circular and legally conclusory, Plaintiffs have failed to state any claim based on "Additional Excluded Property" upon which relief can be granted.

That Defendants accepted the language set forth in Section 1.2(j) of the Asset Purchase Agreement ("APA") has nothing to do with the ambiguous, legally conclusory definition of "Additional Excluded Property" in Plaintiffs' pleadings. The language in the Agreement includes "[t]he enterprise resource planning ('ERP') and accounting software system(s), including but not limited to all related files, databases, programs, and other items and materials, utilized in the Business." Am.

Compl. ¶ 29.   Plaintiffs' definition, by contrast, speaks of "proprietary facts, customizations, lists, drafts, hardcopy, ideas, concepts, as well as other property, tangible and intangible," with no further explanation as to what those things actually are (*id.* ¶ 30); in no way does Plaintiffs' definition track the language in the APA, nor does the language in the APA enable Defendants or the Court to determine what Plaintiffs are placing in issue or whether it falls within the subject matter of copyright.[1]

## II. EVEN IF RULE 12(b)(6) IS SATISFIED, PLAINTIFFS' CLAIMS BASED ON "ADDITIONAL EXCLUDED PROPERTY" ARE STILL SUBJECT TO PREEMPTION.

Plaintiffs' definition of "Additional Excluded Property" – even if acceptable in terms of pleading standards – does not remove those materials from the preemptive scope of the Copyright Act.  Plaintiffs define those materials – whatever they may be – as things that are "believed to be beyond the reach of copyright protection."  *Id.* ¶ 30.  "As has often been observed," however, "'the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.'"  1-1 NIMMER ON COPYRIGHT § 1.01[B][2] (2015) (quoting *United States* ex. rel. *Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997)).  *See also id.* ("It is clear that failure to meet the required standards for federal protection will not

---

[1] In fact, Plaintiffs' definition is internally contradictory.  It includes things that *can* fall within the subject matter of copyright – including "customizations, lists, drafts, hardcopy" and other "intangible" property – but defines those things to be "beyond the reach of copyright protection."

negate federal pre-emption."); *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 658 (4th Cir. 1993) (whether plaintiff actually registered subject property for copyright protection "has no bearing on the preemption of state law under § 301"). In other words, just because something is "beyond the reach of copyright protection" does not mean that it cannot be preempted. Thus, even Plaintiff's self-serving, conclusory definition does not – on its face – remove "Additional Excluded Property" from the preemptive effect of the Copyright Act.

## III. PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS FAILS AS A MATTER OF STATE LAW.

Plaintiffs attempt to dodge the fatal flaw in their trade secrets claim – that the materials in issue are not and cannot be trade secrets – by kicking the issue down the road as a "fact intensive and specific inquiry." Opp'n at 9. Not so. At least, not in this case, where Plaintiffs' own actions and admissions on the record conclusively establish that their trade secrets claim has no merit as a matter of state law.

Specifically, in Alabama, to qualify as a "trade secret," information "[c]annot be readily ascertained or derived from publicly available information" and must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." ALA. CODE § 8-27-2(1) (1975). Here, it is undisputed that Plaintiffs have filed with the U.S. Copyright Office "[s]pecimen copies" comprising "the best evidence" of their registered copyrights, which are "**available for public review and inspection**." Pls.' Am. Compl. ¶¶ 21-22 (emphasis added). Thus, Plaintiffs

cannot establish key elements of their trade secrets claim.  Notably, Plaintiffs do not address this point in their Opposition.  It is not without supporting authorities.  *See*, *e.g.*, 1-1 NIMMER ON COPYRIGHT § 1.01[B][1][h] (2015) ("The secrecy required under state law can be lost by publicly depositing a copy of the subject work ancillary to an effort to register it for copyright.").  *See also Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 504 (7th Cir. 2011) ("Once the possessor of information intentionally releases that information, the possessor can no longer make a successful trade secrets misappropriation claim because the information is not subject to reasonable efforts to maintain secrecy."); *Warrington Assocs., Inc. v. Real-Time Eng'g Sys., Inc.*, 522 F.Supp. 367, 369 (N.D. Ill. 1981) (that plaintiff had registered manual for copyright "might well affect the continued secrecy of the ideas in that manual for which [plaintiff] seeks trade secret protection").

On this record, Plaintiffs' trade secrets claim fails as a matter of state law. Defendants respectfully request that it be dismissed.

## IV.   PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT FAILS AS A MATTER OF STATE LAW.

Plaintiffs' claim for breach of contract is barred by the merger clause in the APA.  Plaintiffs' attempts to dodge the implications of this provision by spinning the alleged oral contract as "outside . . . the four corners of" and "contemporaneous" and "collateral" to the APA (Opp'n at 9-11), are without merit.

First, the plain language of the APA covered the substance of Plaintiffs' alleged oral contract.  In fact, the APA comprehensively addressed all intellectual property in Plaintiffs' business at the time of the transaction.  First, the APA defined "Intellectual Property" as "[certain trademarks, applications, websites, web pages, and domain names set forth in schedules] **and all other intellectual property of any kind or nature, whether arising under statute, common law or otherwise, registered or unregistered, owned by Seller and utilized exclusively in the operation of the Business**."  APA § 6.13(jj) (emphasis added).  Plaintiffs cannot plausibly argue that this sweeping language omits intellectual property associated with the software program at issue in this case.

Next, incorporating this broad definition, the APA further provided that, "[o]n the Closing Date, the Intellectual Property will be owned or available for use by [Defendant David Peyser Sportswear, Inc.] on identical terms and conditions as are applicable to [Plaintiffs] prior to the Closing."  *Id.* § 2.1.7(b).  Thus, the APA addressed all intellectual property "utilized exclusively in the operation of [Plaintiffs'] business" – including any intellectual property associated with the software program at issue – and made such intellectual property "available for [Defendants'] use" following the transaction.[2]

---

[2] Nor does the provision of the APA excluding the software program from the assets transferred in the transaction change this fact.  The intellectual property rights associated with the program were addressed separately from and differently than the program itself.  In other words, by the

Turning, then, to the APA's merger clause, it is clear that it addressed and nullified the alleged oral contract asserted by Plaintiffs (assuming, of course, that such a contract existed, a point that Defendants dispute).  Specifically, the merger clause addressed "all prior agreements and understandings, both written and oral . . . , between the parties with respect to the subject matter" of the APA.  And, as set forth above, the "subject matter" of the APA included all intellectual property of any kind or nature owned by Plaintiffs and utilized exclusively in the operation of the "To the Game" business.

The law supports this result.  The Supreme Court of Alabama has recognized "three requirements for an agreement to be beyond the scope of a merger clause: (1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing."  *Ritter v. Grady Auto. Grp., Inc.*, 973 So. 2d 1058, 1062 (Ala. 2007) (citations and quotation marks omitted).  None of these requirements are satisfied here.

First, the alleged oral contract was not collateral to the APA.  Alabama courts have considered in making this determination whether "the written contract dealt expressly with the subject matter of the alleged collateral oral agreement" and

plain language of the APA, Defendants did not acquire Plaintiffs' software program in the transaction, but they did acquire the *right to use* that program in the business moving forward.

whether the subject matter was such that "the parties would naturally have included in the written agreement." *Ala. Elec. Co-op., Inc. v. Bailey's Constr. Co.*, 950 So. 2d 280, 289 (Ala. 2006). Here, as set forth above, the APA expressly dealt with all intellectual property utilized in the business. Further, one would certainly expect an agreement regarding the post-transaction use of certain intellectual property that *contradicted* the language of the APA would have been set out in the comprehensive written agreement between the parties, not in a separate, oral agreement. The alleged oral agreement asserted by Plaintiffs was not collateral to the APA.

Second, the alleged oral contract contradicts express provisions of the APA, namely, the provision providing that the intellectual property utilized in the business would "be owned or available for use" by Defendants following the transaction. Plaintiffs' contention that certain intellectual property rights were withheld and separately licensed is directly contradictory to this plain language. That the APA excluded the software program from the asset purchase does not alter its provision for intellectual property rights associated with that asset. The language "available for use" as an alternative to "owned" specifically addressed such a situation.

Third, it is difficult to imagine a situation where the parties would be expected to embody an alleged oral agreement in the writing between them more than here. The APA is a comprehensive agreement covering all aspects of the transaction between the parties. One would certainly expect to find an agreement of the kind

asserted by Plaintiffs – one that contradicts the APA's express language and concerns rights and assets specifically addressed in the APA – to appear within the written document.

The merger clause in the APA applies and bars Plaintiffs' breach of contract claim as a matter of law.  Defendants respectfully request that it be dismissed.

## V.    PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT.

Plaintiffs' arguments against preemption under the Copyright Act lack merit. *First*, they try to spin their claim for misappropriation of trade secrets as one based on "a breach of trust or confidence" (Opp'n at 8, 13), but that is simply not the case. The claim is clearly based on Defendants' "use" of what Plaintiffs claim to be their trade secrets.  *See* Am. Compl. ¶ 66 ("Defendants' use of the Plaintiffs' trade secrets . . . ."); *id.* ¶ 67 ("Defendants' use of Plaintiffs' trade secrets . . . .").  Courts have held such claims preempted, distinguishing them from claims based upon a defendant's *disclosure* of materials that it had a duty to keep confidential.  *See Mktg. Info. Masters, Inc. v. Bd. of Trs. of Cal. State Univ. Sys.*, 552 F. Supp. 2d 1088, 1098 (S.D. Cal. 2008); *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 963 (D. Kan. 2004); *Long v. Quality Computers & Applications, Inc.*, 860 F. Supp. 191, 197 (M.D. Pa. 1994).  The trade secrets claim is preempted.

*Second*, Plaintiffs fail to account for the fact that claims for breach of contract have been held preempted in certain circumstances.  *See* Opp'n at 13-14.  Defendants

cited several decisions in their motion where courts have reached that conclusion, and Plaintiffs have done nothing to address them.  Courts have applied preemption when a claim for breach of contract was nothing more than a claim that a defendant continued to use copyrighted materials beyond the scope of an alleged agreement authorizing their use.  That is precisely the case here.  *See* Am. Compl. ¶ 76.  The breach of contract claim is preempted.

*Third*, Plaintiffs do little to rebut Defendants' preemption argument on the fraud/fraudulent suppression claim.[3]  Defendants again cited *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305 (11th Cir. 2001), to show that preemption applies to fraud claims based on allegations of acquisition misconduct, like Plaintiffs' fraud claim here.  Nevertheless, after extensive discussion of *Lipscher* at the previous hearing and Defendants again relying on it in their recent motion, Plaintiffs do little to distinguish it (and relegate their efforts to a footnote).  *See* Opp'n at 16 n.2. Defendants submit that *Lipscher* is squarely on point.  It establishes that fraud claims are not immune from preemption, especially when they are based on the means by

---

[3] For several of their state law claims, Plaintiffs, without diving into further detail, seem to be relying on the fact that claims of the type in question *generally* survive preemption under the Copyright Act.  But for each claim, Defendants have shown that, upon further examination, courts have held such claims preempted under circumstances similar to those present here.

which a party accesses allegedly copyrighted material, like Plaintiffs' claim here. The fraud/fraudulent suppression claim is preempted.[4]

*Fourth*, the parties do not dispute that conversion claims based on intangible property are preempted; they dispute whether conversion of tangible property has been legitimately placed in dispute in this case.  It has not.  There are simply no allegations that Plaintiffs have demanded the return of any physical property from Defendants, much less been damaged by Defendants' refusal to do so.  *See* Am. Compl. ¶¶ 87-94.  The conversion claim is preempted.

* * * *

Each of Plaintiffs' state law claims is preempted by the Copyright Act. Defendants respectfully request that those claims be dismissed accordingly.

## VI.   PLAINTIFFS' CLAIM FOR PERMANENT INJUNCTIVE RELIEF IS PREEMPTED BY THE COPYRIGHT ACT.

Plaintiffs' claim for permanent injunctive relief is moot.   Defendants stipulated in open Court that they were no longer using the software program at issue in connection with their business.  Plaintiffs' speculation that Defendants' new

---

[4] Defendants' argument based on punitive damages provides an alternative reason to hold Plaintiffs' state law claims allowing for such recovery to be preempted.  The point is this: The inconsistencies in the damages recoverable under Plaintiffs' state law claims and copyright infringement claim pose a preemption problem when the claims are *based on the same alleged underlying acts*, which is precisely the case here.  In other words, Congress, through the Copyright Act, has set forth a damages scheme applicable to a party when that party engages in certain conduct with respect to copyrighted material.  To allow state law to tack on additional remedies based on the *same conduct* would run afoul of the Act's preemption provision.

system *might* infringe their copyrights is an unsubstantiated new claim.  It does not breathe life into the claim for permanent injunction set forth in Plaintiffs' Amended Complaint.

WHEREFORE, Defendants respectfully request the Court to dismiss Plaintiffs' claims for violation of the Alabama Trade Secrets Act, breach of contract, fraud/fraudulent suppression, conversion, and permanent injunctive relief.

Respectfully submitted on this, the 24th day of February, 2017.

s/ Rudy Hill
Jonathan C. "Rudy" Hill
rhill@bradley.com
Bar No. ASB-9459-A64H
BRADLEY ARANT BOULT CUMMINGS LLP
RSA Dexter Avenue Building
445 Dexter Avenue, Suite 9075
Montgomery, AL  36104
Telephone: (334) 956-7660
Facsimile:  (334) 956-7860

*One of the Attorneys for Defendants*

OF COUNSEL:
John E. Goodman
jgoodman@bradley.com
Bar No.ASB-4665-G48J
Michael S. Denniston
mdenniston@bradley.com
Bar No. ASB-6906-O45M
C. Meade Hartfield
mhartfield@bradley.com
Bar No. ASB-6709-R79H
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Will Hill Tankersley, Esq.
> Thomas R. DeBray, Jr., Esq.
> BALCH & BINGHAM LLP
> P. O. Box 306
> Birmingham, AL  35201-0306
>
> Joshua L. Howard, Esq.
> Mike S. Cashman, Esq.
> WOMBLE CARLYLE SANDRIDGE & RICE, LLP
> 550 South Main Street, Suite 400
> Greenville, SC  29601

> s/ Rudy Hill
> _____
> OF COUNSEL